## BOBO v. VAIDEN.

1. Where a surety on an administration bond petitions for relief and a new bond is required and given, the second bond becomes the primary security, not only as to the surety who petitioned, but also as to the other sureties on the first bond.

2. But the administrator, when cited to show cause under his surety's petition, having made return showing a balance in hand much less than the true balance—an error resulting from an incorrect voucher given him by such petitioning surety—the first bond is primarily liable to the extent of such error.

3. A distributee who was also a surety on the administrator's bond, having made an assignment of his distributive share in the estate, the assignee is entitled only to what is left to such surety after paying his liability to the estate for the devastavit of the administrator. And the benefit of this rule may be claimed by the other sureties.

Before FRASER, J., and PRESSLEY, J., Union, June, 1881, and March, 1882.

This was an action by Ira L. Bobo and others, distributees of the estate of John Bishop, deceased, against W. H. Vaiden, administrator, and the sureties on his two bonds, for account and settlement, commenced August 29th, 1879. There were no unpaid creditors.

The facts connected with the points made in this court are sufficiently stated in the opinion. There was testimony of P. M. Cohen, a surety on the second bond, that before signing he made inquiry as to the amount of Vaiden's liability on his first bond,

and that he would not have signed it if he had known that the liability was for $300 more than he was then informed. There was no allegation of bad faith in Minter.

The decree of Judge Fraser was as follows :

As I understood the counsel in the argument before me, it was desired that the question of the rights of sureties as amongst themselves should be settled. Without entering into a full examination and discussion of the cases bearing on this subject, I will state my conclusions very briefly.

The words of the present act, *Gen. Stat. p.* 453, § 8, are substantially the same as the old act on the same subject. In *Ordinary* v. *Bigham & Hudson,* 2 *Hill* 516, it is said that the ordinary may revoke the administration and grant administration *de bonis non,* or he may order the administrator to substitute a new security for the discontented one in a new bond.

The doctrine in *Enichs* v. *Powell,* 2 *Strobh. Eq.* 196, I take to be, that where there is a revocation of the administration, and the same person is appointed and gives a new bond, the debtor and creditor being united in the same person, there would be the usual presumption of payment to the administrator in his new capacity ; that this would be followed by the same consequences as an actual payment to any other person who might have been appointed in his place, and the sureties on the first bond relieved, *ipso facto,* by such revocation and re-appointment. Where, however, there is no revocation but an order for a new bond only, all the sureties are parties to a common undertaking, and jointly liable to the beneficiaries. If the circumstances show that the new bond was given at the instance of a surety, and for his protection, as in *Field* v. *Pelot,* then the sureties to the new bond are primarily liable, and the sureties to the first bond, who petitioned for relief, only secondarily liable.

Only one of the first set, John R. Minter, is before the court in this case, and he was the petitioner. Was the order of the Probate judge in this case a revocation ? It certainly was not an order simply to substitute a new surety for the discontented one —at least not so intended. In *Field* v. *Pelot* an order had been made by the Court of Equity for guardians to give a new bond

with sureties, " on or before March 1st next, or after that day the letters of guardianship shall be considered as revoked." Some time after this time had expired the guardians gave a new bond, no new appointment having been made. The court held that the bond was a good one, but that though there was no new appointment the guardianship was a continuing one, and the new surety estopped from denying his liability on the bond. Dr. Stoney was a surety on the first bond and John S. Field was surety on the second. The court, per Harper, says: "That Dr. Stoney could not be discharged from all responsibility, but the surety might well assume the primary liability. * * * If Dr. Stoney had paid his bond with his own money he would have a right to be re-imbursed in full by Field. If Field had paid off his bond he could have recovered nothing against Stoney." This was said in reference to a guardianship bond. *Field* v. *Pelot; McMull. Eq.* 382.

In the same case, Chancellor Harper says: " There is nothing to prevent the new surety binding himself to the same extent as the old, whether for past or future liabilities (on administration bonds); and such are the plain terms and obvious purposes of his undertaking. * * * When a party interested in the estate becomes dissatisfied, * * * it would seem that the new security is only collateral to the former. * * * But when it is the surety who becomes dissatisfied with his responsibility and seeks to be relieved, the converse seems to follow. * * * The court cannot substitute a new security so as to discharge the former from his contracts. But there is nothing to forbid its requiring a new security, which, as between the sureties themselves, shall be the primary one, leaving the former only collateral; and such seems to be the nature of the new sureties' undertaking."

The court, in the case of *Field* v. *Pelot*, seems to have expounded the principles in reference to sureties on administration bonds, and to have applied them to a case of guardianship bonds —in its leading features very much like the case now before this court. It is very difficult to see how any positive act of mal-administration could be established in this case before twelve

S

months from the death of the intestate had passed, and before there could have been any lawful payments, either of debts or distributive shares. I am of the opinion that unless there was some positive breach of trust, by refusal to pay out on lawful demand, or of devastavit, by wasting the assets before the second bond was given, the second bond was the primary security, and all the circumstances show that was its purpose and that the sureties on the second bond are not entitled to call on John R. Minter, a surety on the first bond, and at whose instance and for whose protection the second bond was given, for contribution for any payments they may be compelled to make; that John R. Minter is liable to the distributees, and if he pays anything is entitled to contribution from the sureties on the second bond, and it is so ordered and adjudged.

All questions of costs and other questions in this cause are left open for future investigation and adjudication in this cause.

The decree of Judge Pressley was as follows:

The testimony and report of referee in this case are not in such form as would make me understand the various points raised by the exceptions; I therefore decide only:

1st. That the rule laid down by Judge Fraser in his past decision of this case, in favor of one of the sureties to the first bond, is also applicable to Elizabeth Bishop, she being liable on any devastavit of W. H. Vaiden, only in case the sureties to the second bond fail to pay the same.

2d. That no devastavit has been shown which would fall primarily upon the first bond, the amounts which the administrator failed to sell for cash being either to himself or having been collected by him, except the purchases of Mrs. Gordon Bishop, for which, I decide, he must receive credit as so much paid by him on her share as one of the distributees of her husband.

3d. The assignment of Catherine Vaiden to D. P. Duncan is valid, and he should receive out of her share the amount he paid for her husband, with interest at seven per cent. from the time he paid it.

4th. The other sureties on the second bond are entitled to have the remainder of the share of Catherine Vaiden in said estate

applied to her liability as co-surety, that application to extend also to her share in the shares of other distributees who may have died without leaving other heirs than brothers or sisters.

5th. All other points raised by any of the exceptions to said report are recommitted to the referee for further testimony and definite report thereon.

The decree of Judge Wallace simply embodied, in final form, what had already been decided.

*Mr. R. W. Shand,* for appellant.

*Mr. J. C. Wallace,* for administrator of Elizabeth Bishop.

*Mr. J. B. Steedman,* for J. R. Minter.

*Mr. D. Johnson, Jr.,* for D. P. Duncan.

November 27th, 1883. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. John Bishop, late of Union county, died intestate in April, 1874. W. H. Vaiden was appointed his administrator May 13th, 1874, upon his entering into bond with Elizabeth J. Bishop, W. A. Johnson and John R. Minter, as his sureties. John R. Minter, one of the sureties, afterwards, to wit, on November 30th, 1874, upon petition to the Probate Court to that end, obtained an order releasing him from all further liability upon the administration bond which he had signed, and the defendant, W. H. Vaiden, was required in said order to give another bond on or before December 8th next thereafter, and in default thereof, that his letters be revoked. On December 15th, 1874, seven days after the time fixed in the order, Vaiden gave a new bond as administrator, with Caroline Vaiden, James M. Johnson, W. M. Stewart, John Ray and P. M. Cohen, as sureties. The action below was against the administrator, W. H. Vaiden, and some of the sureties on each bond, and was for an accounting.

A short time before Minter was relieved, he had a transaction

with the administrator, in which he gave to said administrator a receipt for $788.37, as so much paid on a debt which he, Minter, held on the estate of the intestate, when in fact the administrator only paid him $468.37, just $320 less than the amount called for in said receipt. Minter explained this by the statement that Bishop in his life-time had made payments on the note which he held, leaving a balance of $468.57, which was paid by the administrator, but as there had been no credits on the note of the amounts previously paid by Bishop, that he gave a receipt to the administrator in full. The administrator in his return obtained a credit for the $788.57, as if the whole sum had been paid by him out of assets in his hands as administrator.

In the progress of the case, D. P. Duncan claimed that the share of Mrs. Vaiden, a daughter of the intestate, and one of the sureties to the second bond, had been assigned to him in payment of a debt due to him by Mrs. Vaiden.

The case in one form or other has been heard by Judge Fraser, Judge Pressley, Judge Aldrich and Judge Wallace; the principal questions involved being: First. The respective liabilities of the sureties on the two bonds. Second. Whether Minter shall be held primarily liable for the $320 difference between the receipt he gave to the administrator, and the amount actually paid him; and lastly, whether Duncan should be paid out of Mrs. Vaiden's share to the exclusion of her liability as one of sureties on the bond. Judge Fraser held the second bond the primary security as to Minter, but passed no judgment as to the $320. At that time Duncan had not intervened, and consequently his claim was not before the court, and Judge Fraser seemed to have understood that Elizabeth Bishop, one of the sureties to the first bond, had not been made a party, and consequently he made no decree as to her.

Judge Pressley held the second bond a primary security as against Elizabeth as well as Minter, this, as he said, being in accordance with the rule laid down by Judge Fraser as to Minter, but he did not pass upon the $320 matter. At that time Duncan had intervened and presented his claim, and Judge Pressley allowed it, holding it superior to the rights of set-off and retainer asserted by Mrs. Vaiden's co-sureties on the administra-

tion bond. Judge Aldrich recommitted the matter to the referee to state the accounts, and upon the coming in of a second report, Judge Wallace confirmed it, and passed an order in accordance with the previous decrees, making the second bond the primary security as to all of the parties, and allowing the Duncan claim in advance of any appropriation of Mrs. Vaiden's share to her liability on the bond.

Cohen, one of the sureties on the second bond, has appealed, raising the questions raised below, to wit: 1. What are the respective liabilities on the two bonds? 2. Is Minter primarily liable for the $320? 3. Should Duncan be first paid out of Mrs. Vaiden's share? Appellant's counsel admits, that as to Minter the second bond is the primary security, but he claims that Minter should save the sureties on the second bond harmless to the extent of the $320, the amount of the voucher to Vaiden, administrator, in excess of the amount actually paid him. He resists the claim of Duncan, and he denies that Elizabeth Bishop should have the benefit of Minter's release by the order of the Probate judge.

As to the first question. Under the act of 1789, the court of ordinary had power to grant relief in cases of this kind, either by revoking the letters of administration, or by requiring a new bond; yet the vested rights of the parties interested could not be impaired. *Ordinary* v. *Wallace*, 1 *Rich.* 507; *Owens* v. *Walker*, 2 *Strobh. Eq.* 289. The act of 1839 has made no material changes in the law on this subject. It is in substance the same as the act of 1789, differing principally in its phraseology; but under neither of these acts has the precise question now before the court ever been contested and distinctly decided. In *Shelton* v. *Cureton*, 3 *McCord* 412, there were but two sureties to the bond, and both petitioned for relief. In *Trimmier* v. *Trail*, 2 *Bail.* 480, there was only one, and he petitioned. So, too, in *Waterman* v. *Bigham & Hudson*, 2 *Hill* 512. So that the question here presented was not involved in either of these cases. *Field* v. *Pelot*, *McMull. Eq.* 382, was a case of guardianship, and in *Enicks* v. *Powell*, 2 *Strobh. Eq.* 196, the administration was revoked, and a new appointment was made *de bonis non*, of the same party, with a new bond. When a revocation

is ordered and a new appointment conferred on the same party, there is no difficulty, as, by operation of law, payment is presumed to the discharge of the first administration. It is in cases where there has been no revocation—where the original letters continue—that a new bond is ordered, and given at the instance of one or more of the sureties to the first bond, where the difficulty is presented.

As a general principle, it has been settled that the second bond becomes the primary security, and the first is at least suspended until the second is exhausted. True, the first bond cannot be entirely discharged, so far as the parties interested in the estate are concerned; but as between the sureties to the two bonds, the second stands in the front rank and must protect the first. *Glenn* v. *Wallace,* 4 *Strobh. Eq.* 150. See also cases *supra.* If this was a case where all of the sureties to the first bond had petitioned, then these authorities would be directly in point. But here one only of the sureties, Minter, petitioned. Can this make any difference? While, as we have said, the question was not directly involved in either of the cases mentioned, yet the opinion of the distinguished jurists pronouncing judgment is manifest from their utterances therein. See what Chancellor Dargan said on circuit, sustained on appeal, in case of *Owens* v. *Walker, supra.* Also the remarks in *Field* v. *Pelot, supra.* It seemed to be unquestioned that the general principle above applied as well to cases where any number less than all of the sureties to the first bond petitioned, as where all petitioned. In each case, if the relief afforded by the court consisted in requiring simply a new bond, with the original letters of administration continuing, this new bond became the primary security, and it operated to that extent, to the relief of all of the sureties on the first. *Glenn* v. *Wallace,* 4 *Strobh. Eq.* 150.

Indeed, such must necessarily be the result unless the new bond is to be held simply as an indemnity to the petitioning surety. We find no authority for such a position. Nor could such be the understanding or the purpose of the order; because, if so, the new bond should always be executed to the party petitioning for relief, instead of in the usual form of such bonds. Besides, upon the theory that the new bond takes the place of

the first to the extent only of the name of the petitioning surety, which would in effect be the case if it is held simply as an indemnity to him, this would be making a new contract for the other sureties, and one not authorized by them. In this case, Elizabeth Bishop may have been perfectly willing to go on the first bond with Minter as a co-surety, and yet utterly unwilling to sign with the others, with Minter's name erased. "A release of one of several co-obligors is a release of all." *Ordinary* v. *Bigham*, 2 *Hill* 515. There is much force in what Chancellor Dargan said on this subject on circuit in case of *Owens* v. *Walker*, 2 *Strobh. Eq.* 293.

True, the original bond in this case, and all such bonds, are given subject to the act of 1839, in reference to relief to any of the sureties when demanded, but we think such relief should be afforded in harmony with the well-established principles of law in reference to contracts as to other matters, especially as this can be done under the authority conferred by the act of 1839. The power to afford relief is limited by the injunction that the rights of parties shall not be impaired. This injunction can always be regarded, and yet the necessary relief furnished, by following the decided cases, wherein it has been held that the only course for the court to pursue is either to revoke the administration or to require a new bond, which is to stand as a primary security to the old, and not simply as a substitute for the name of the petitioning surety on the old. We think there was no error in the court below as to this first question.

Now, as to the second question. It is not entirely plain from the proof what has been adjudged on this subject. Judge Pressley seems to have thought that Judge Fraser had ruled upon the whole liability of Minter, including that alleged to have arisen out of the error in Vaiden's return of the payment of $788.57 to Minter, and he declined to hear argument in reference to it, and this matter was not separately considered in the final decree of Judge Wallace. But whatever may be the facts in this respect, our view as to the relative liability of the two sets of sureties for the sum of $320 is this: that, as a general rule, the giving of the second bond would have the effect of postponing the liability of the sureties on the first bond to that

of the liability of the sureties on the second bond; but inasmuch as the second set of sureties had a right to suppose from the return required of the administrator, under the proceeding instituted by Minter, that the liability which they were assuming was $320 less than the final accounting has shown it to be, and inasmuch as they were thus misled by the act of Minter, (whether so intended or not is immaterial,) it would be inequitable to allow Minter to claim exemption from primary liability for the said sum of $320. And as Mrs. Bishop did not herself join in the application for relief, but can only obtain the same under or through her co-surety, Minter, her administrator cannot now claim any more than he can. We think, therefore, that the judgment of the Circuit Court should be so modified as to exempt the appellant from primary liability so far as the said sum of $320 and interest is concerned.

As to the Duncan claim. On December 15th, 1874, W. H. Vaiden was required to give a second bond for the administration of the estate of his intestate, John Bishop. Caroline, the wife of the administrator, and daughter of Bishop, and as such entitled to a share of his estate, became one of the sureties on the bond of her husband, as administrator. It seems that the administrator wasted the estate, and it becoming necessary to replace the assets out of the sureties, Mrs. Vaiden, or her assignee, insisted that in 1877 she, as distributee, had assigned to D. P. Duncan so much of her share in the estate as would secure a debt he had contracted for her husband, and the claim thus made was allowed. It seems to us that it would be inequitable to allow Mrs. V. to contract a liability to the estate by signing the administration bond of her husband, and afterwards to assign her interest in the estate, and thereby throw the whole weight of her husband's default upon her co-sureties, who probably were induced to join her in the suretyship on the faith of her interest therein. We are not informed whether she has any other means to meet said liability.

The real interest of a distributee in the estate is what remains after all his obligations to the estate have been discharged. It is upon this principle that he is chargeable with advancements and obligations to the intestate, even where the right of action is

lost. *Wilson* v. *Kelly,* 16 *S. C.* 216. The principle extends to obligations to the administrator, as where personal property is bought at his sale. We do not perceive why a liability on the administration bond should not also fall under the operation of the same rule. Dues of the sureties upon the administration bond are only assets of the estate in place of those wasted by the administrator. Suppose there was only one distributee and he was the only solvent surety upon the bond. Until something was paid, there could be nothing for the distributee. He would be simply debtor to himself. If Mrs. Vaiden were now suing the estate for her share, is there any doubt that her liability as surety would be set off before anything would be paid her? Has the assignee any higher right? The demand is a mere chose in action, and, in such cases, the admitted rule is, that the assignee takes the interest assigned subject to all the defenses both legal and equitable against the assignor. *Wait Anno. Code* 120; *Lynch's Code,* § 135.

But it is said that the question as to whether there is an equitable defense must be determined by the facts as they stood at the time of the assignment, and at that time no *devastavit* had been established against the administrator, and that the sureties had paid nothing. It is true that, at the time of the assignment, the *devastavit* had not been established formally; but it is now established. We have no means of knowing precisely when it was actually committed. We incline to think it was before the assignment, as it appears from the accounting before the referee that there was nothing either received or paid out after the date of the assignment. But, under the authorities, it seems to be unnecessary to inquire when it was either committed or judicially ascertained. When the assignment was made, in 1877, the bond had been given for three years, and that was the obligation which created her liability, and to it the *devastavit*, whenever judicially established, must be referred. *De La Howe* v. *Harper,* 5 *S. C.* 470. Besides, the liability as surety is not an independent debt, but grows out of and is "connected with the subject-matter" of the estate, and it seems to us that Mrs. Vaiden has no share in the estate until that liability is discharged. The assignment to

Duncan must be considered as subject to the liability of Mrs. Vaiden as surety on the administration bond.

The judgment of this court is that the judgment of the Circuit Court be modified so as to conform to the conclusion herein stated, and affirmed in all other respects.